**In the Matter of the Complaint against David J. SMITH.**

No. 940571.

Supreme Court of Utah.

Sept. 27, 1996.

Stephen R. Cochell, Carol A. Stewart, Salt Lake City, for the Utah State Bar.

David J. Smith, Cedar City, pro se.

HOWE, Justice:

David J. Smith appeals from a summary judgment that his Wisconsin convictions of theft by fraud and two counts of false swearing subject him to disciplinary action by the Utah State Bar.

## FACTS

On April 26, 1986, a circuit court jury in Oneida County, Wisconsin, convicted Smith, a Utah and Wisconsin attorney, of theft by fraud and two counts of false swearing. He was sentenced to four years of confinement, three years of probation, and a fine of $5,800. The Wisconsin Court of Appeals affirmed his conviction, *State v. Smith*, No. 87-1179-CR, 1988 WL 100253 (Wis.Ct.App. July 6, 1988), and the Wisconsin Supreme Court denied certiorari. *State v. Smith*, 146 Wis.2d 876, 430 N.W.2d 918 (1988). Subsequently, Smith petitioned for a writ of habeas corpus in the United States District Court for the Western District of Wisconsin. After that court dismissed his petition without prejudice because he had included claims which had not been exhausted in state court, Smith amended his petition and refiled. The court then denied his petition on the merits. The Wisconsin Supreme Court held a disciplinary hearing and revoked his license to practice law. Smith then moved for postconviction relief in the Oneida County Circuit Court. As far as the record indicates, that motion is still pending.

Utah Bar Commissioner Hans Chamberlain advised Utah Bar counsel of Smith's Wisconsin convictions in a letter dated August 11, 1986. Chamberlain expressed concern that Smith was still actively practicing law in the Cedar City, Utah, area and in-

quired whether interim suspension of Smith would be appropriate. On September 16, Bar counsel mailed to Smith a notice that a complaint had been filed in that office against him and a copy of the Wisconsin amended criminal complaint. This court subsequently placed him on interim suspension. The Bar screening panel delayed formal disciplinary proceedings against him pending the results of his Wisconsin criminal appeals and the Wisconsin bar's disciplinary action. On June 22, 1989, Utah Bar counsel filed a formal complaint against him with the Board of Bar Commissioners, charging him with violation of canon 1 disciplinary rule (DR) 1–102(A)(3) of the Utah Code of Professional Responsibility, then in effect, which stated, "A lawyer shall not ... (3) [e]ngage in illegal conduct involving moral turpitude," and/or of DR 1–102(A)(6), which stated, "A lawyer shall not ... (6) [e]ngage in any other conduct that adversely reflects on his fitness to practice law." The Board held a hearing and recommended that Smith be disbarred. Smith appealed to this court, but he and Bar counsel later stipulated to dismissal of that appeal in favor of a new trial and a new sanctions hearing.

In 1993, this court adopted the Rules of Lawyer Discipline and Disability (RLDD). At that point, the Office of Attorney Discipline (OAD) became Bar counsel's successor, and it transferred the case to the Fifth Judicial District Court, Iron County, Utah, pursuant to RLDD 11. That court granted the Bar's motion for summary judgment against Smith, also finding him guilty of violating DR 1–102(A)(4).[1] In a subsequent sanction hearing, the court considered mitigating and aggravating factors and found that they roughly balanced out. As a result, the court ordered Smith disbarred, giving him disbarment time credit under RLDD 25(a) for the period he spent on interim suspension, and authorized him to apply immediately for readmission to the Utah Bar. Instead, Smith filed this appeal.

[1] Summary judgment is appropriate only when there are no issues of material fact

---

1. "(A) A lawyer shall not ... (4) [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation."

and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993). We review the trial court's conclusions of law for correctness, granting them no deference. *Ferree v. State*, 784 P.2d 149, 152 (Utah 1989).

## ANALYSIS

### A. Statute of Limitations

Smith first attacks the Utah Bar's proceedings against him on the basis that they were not timely filed. Rule XV of the Procedures of Discipline, in effect at the time the Bar filed its complaint,[2] provided that a disciplinary complaint based on a criminal conviction must be filed within four years of the conviction. The Bar's complaint alleged that Smith was convicted in Wisconsin on or about February 22, 1985. Smith admits to the convictions but denies that they occurred on that date. Since the Wisconsin trial began during the week of April 21, 1986, the 1985 date places conviction before the trial and is clearly an error. In addition, the United States District Court's response to Smith's first habeas petition cites April 26, 1986, as the date of the conviction. Nonetheless, Smith relies on the 1985 date in his contention that since the formal complaint against him was not filed until June 22, 1989, it is barred by the statute of limitations.

■ We examined the triggering event of an attorney disciplinary action for statute of limitations purposes in *In re Strong*, 616 P.2d 583 (Utah 1980). Comparing the significance of the original accusation and the formal filing, we held that "there is a distinction between the original accusation or complaint and the filing of the prosecutive complaint. The disciplinary action is initiated by the filing of the first accusation of improper conduct." *Id.* at 586. In the instant case, Chamberlain's letter of August 11, 1986, followed by the mailing to Smith of the notice that a complaint against him had been filed, was the first accusation of improper conduct. Therefore, the filing of the formal complaint

relates back to the date of Chamberlain's letter. Thus, even if, contrary to logical possibility and the record, Smith's conviction did occur in February of 1985, the 1986 disciplinary proceedings commenced within only eighteen months of the conviction, clearly within the four-year statute of limitations. If we accept the record conviction date of April 26, 1986, then even the formal complaint was filed within four years of the conviction. The trial court correctly found that the Bar's complaint against Smith was timely filed.

### B. Full Faith and Credit

#### 1. Jurisdiction

■ Article IV, Section 1 of the United States Constitution provides, "Full Faith and Credit shall be given in each State to the Public Acts, Records and Judicial Proceedings of every other State." Nevertheless, Smith contends that his Wisconsin convictions cannot be the basis for a Utah disciplinary action because the Wisconsin court lacked jurisdiction and denied him his right to counsel, thus rendering the convictions void and of no effect in Utah. It is true that a "foreign judgment rendered without jurisdiction over the defendant or under circumstances which amount to a lack of due process is not entitled to full faith and credit in Utah." *Holm v. Smilowitz*, 840 P.2d 157, 164 (Utah.Ct.App.1992) (citing *Data Management Sys., Inc. v. EDP Corp.*, 709 P.2d 377, 379 (Utah 1985)). It is equally true, however, that "although our Court may inquire into the jurisdictional basis of a foreign judgment, a determination by the rendering state on the issue of jurisdiction is res judicata when that issue is fully and fairly litigated there." *Id.* at 379 (citing *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 705–06, 102 S.Ct. 1357, 1366–67, 71 L.Ed.2d 558 (1982); *Durfee v. Duke*, 375 U.S. 106, 111–13, 84 S.Ct. 242, 244–46, 11 L.Ed.2d 186 (1963); *Clarkson v. Western Heritage*, 627 P.2d 72, 74 (Utah 1981)).

---

**2.** In 1993, the RLDD replaced the procedural rules. Rule 29 of the RLDD requires, "Proceedings under these rules shall be commenced within four years of the discovery of the acts allegedly constituting a violation of the Rules of Professional Conduct."

Smith asserts that the temporarily appointed judge in the Wisconsin circuit court where he was charged and convicted sat as a magistrate only and therefore lacked authority to appoint the two assistant attorneys general who brought the charges. Consequently, he argues, the court lacked jurisdiction over him. The Wisconsin Court of Appeals rejected Smith's argument. He then raised the issue to the Wisconsin Supreme Court, which denied certiorari, and to the federal district court in a petition for a writ of habeas corpus, which the court denied on the merits. We stated in *Harris v. Briggs*, 621 P.2d 1244 (Utah 1980), that if the same issue as to jurisdiction was raised in the foreign court " 'and adjudicated therein, then the determination of that issue becomes res judicata, and is entitled to full faith and credit, the same as any other issue that has been so determined.' " *Id.* at 1246 (quoting *Fullenwider Co. v. Patterson*, 611 P.2d 387, 389 (Utah 1980)).

The jurisdictional issue has been fully litigated in the Wisconsin courts, and we will not reopen it here. As the United States Supreme Court emphasized in *Durfee*, "[T]here emerges the general rule that a judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." 375 U.S. at 111, 84 S.Ct. at 245; *see also Sherrer v. Sherrer*, 334 U.S. 343, 348, 68 S.Ct. 1087, 1089, 92 L.Ed. 1429 (1948) ("It is clear that respondent was afforded his day in court with respect to every issue involved in the litigation, including the jurisdictional issue of petitioner's domicile. Under such circumstances, there is nothing in the concept of due process which demands that a defendant be afforded a second opportunity to litigate the existence of jurisdictional facts.").

Smith now cites a subsequent Wisconsin case, *State v. Braun*, 152 Wis.2d 500, 449 N.W.2d 851 (Wis.Ct.App.1989), in which the court voided a conviction because a properly appointed special prosecutor acted beyond the scope of his appointment. He seeks retroactive application of *Braun*, which arose after Smith's 1988 appeal but before the federal court's 1992 habeas decision. *Braun* constitutes the principal grounds for Smith's motion for postconviction relief with the Oneida County Wisconsin Circuit Court. In *Strong v. Turner*, 22 Utah 2d 294, 297, 452 P.2d 323, 325 (1969), we declined to adjudicate the plaintiff's detainer which was pending in Kansas, stating that if "it should prove that there is a genuine issue with respect to this matter, it must be determined by the courts of the State of Kansas, as we give full faith and credit to its judgment." Likewise, we defer to the Wisconsin courts to determine the retroactive application of Wisconsin's own case law to Smith's prior convictions there. At this time, however, having no reason to expect a resolution in Wisconsin different from the five determinations already made there, we will proceed to the merits of this case.

## 2. Right to Representation

Smith next contends that he was denied the right to counsel in his Wisconsin criminal trial and that therefore his conviction is void and not eligible for full faith and credit in Utah. We addressed the right to representation by counsel in *State v. Triptow*, 770 P.2d 146, 149 (Utah 1989). There we reasoned that "after proof of the previous conviction is introduced, the burden is on the defendant to raise the issue and produce some evidence that he or she was not represented by counsel and did not knowingly waive counsel." Smith has attempted to do this. The record indicates that his original counsel withdrew due to Smith's lack of cooperation in preparing the defense and his failure to pay the retainer fee. In addition, in December of 1985, the court, sua sponte, rescheduled the trial date for April of 1986, giving Smith an additional four months to retain new counsel. At that time, the court warned him that the new trial date was firm, that no additional continuances would be granted, and that he would need to either obtain new counsel or be prepared to proceed pro se. Smith subsequently filed motions with the court indicating that he would be representing himself for the time being. One week before the trial date, he contacted the court and requested a continuance to allow his newly retained coun-

sel time to prepare. The court denied his request, reiterating that he had received notice of the firm trial date which gave him ample time to hire counsel. On the morning of trial, Smith, for the first time, objected to the withdrawal of his original counsel, claimed to be indigent, and requested court-appointed counsel. There was no court finding of indigence. Smith's previous successful business and legal dealings cast serious doubt on his claim that he was unable to pay for representation. Because the court refused to further delay the trial and required him to proceed on his own, Smith argues that he was deprived of his Sixth Amendment right to counsel.

We stated in *Triptow* that when a defendant has offered evidence of a denial of right to counsel in the absence of a knowing waiver, "the presumption of regularity is rebutted and the burden shifts to the State to prove by a preponderance of the evidence that the defendant was in fact represented or knowingly waived representation." *Id.* The Wisconsin Court of Appeals and the United States District Court found that the facts recited above, coupled with the fact that Smith was an experienced attorney and capable of representing himself, were sufficient to establish that he knowingly waived representation. The Wisconsin trial court noted that in light of his past behavior, there was no assurance that Smith would obtain counsel for a later trial date, even if a continuance were granted. The Wisconsin Court of Appeals observed that "while a defendant must be afforded a fair opportunity and reasonable time to secure counsel of his own choice, his right to select his own counsel cannot be manipulated so as to obstruct the orderly procedure for trials or to interfere with the administration of justice." *State v. Smith*, No. 87-1179-CR, slip op. at 10. The United States District Court, in denying Smith's habeas petition on the merits, remarked:

> The facts show unequivocally that petitioner put himself in the position of going forward without counsel. If he had funds, he had plenty of time to find a lawyer to represent him. If he did not have funds, he had plenty of time to make that fact

known to the court or to talk directly with the public defender's office. As a lawyer licensed to practice in Wisconsin, petitioner cannot argue seriously that he was unaware of his options or the risks of trying to represent himself in a criminal proceeding.

*Smith v. Doyle*, No. 88-C-932-C, slip op. at 6 (W.D.Wis. Dec. 22, 1992).

■ We are satisfied from the record that the issue of Smith's right to representation was fully and fairly litigated in the Wisconsin courts and that the prosecution met its burden of showing that Smith knowingly waived his right to counsel. The rationale for full faith and credit, in addition to promoting consistency and judicial economy, is to protect fairly adjudicated decisions from after-the-fact alteration by courts that lack access to true adversarial proceedings. Smith would persuasively put his own arguments before us, but who would represent the prosecution? Thus, under full faith and credit, these issues are res judicata, and we are constitutionally prohibited from exercising appellate jurisdiction over the courts of Wisconsin. "Public Policy ... dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Durfee*, 375 U.S. at 111, 84 S.Ct. at 245.

### C. Behavior Subject to Discipline

Smith contends that "the judgment of disbarment in the action is not supported by any misconduct, criminal or otherwise.... It is grounded on an alleged criminal conviction which is constitutionally infirm and absolutely void." Yet the record shows unequivocally that Smith's criminal convictions in Wisconsin are not merely "alleged." They are supported by certified copies of the conviction judgments and admitted by Smith himself. Under RLDD 19(e), "[e]xcept as provided in paragraph (b), a certified copy of a judgment of conviction constitutes conclusive evidence that the Respondent committed the crime." [3] Following his convictions,

---

3. Paragraph (b) establishes procedures for imposing interim suspension and provides that "the

Smith made four separate attempts in Wisconsin to persuade courts of review that the trial court's decision was "constitutionally infirm," all without success. Once again, we will not attempt to second-guess the decisions of the Wisconsin courts which had access to the full record and conducted adversarial proceedings. The relitigation of a lawyer's guilt, whether decided by the forum state or a foreign court, has no place in a disciplinary hearing, nor can an appeal of the Utah disciplinary measures be appropriated to collaterally attack the decision of a foreign court. *See Maryland State Bar v. Rosenberg*, 273 Md. 351, 329 A.2d 106, 108 (1974) (new inquiry into guilt of attorney for disciplinary purposes not mandated when guilt established beyond reasonable doubt at criminal trial observing due process).

■ We adopted the Standards for Imposing Lawyer Sanctions ("Standards"), which serve to implement the Rules of Professional Conduct, not as a punitive measure, but rather to foster a legal community worthy of public confidence. The stated objectives of the Standards are to ensure and maintain the requisite high standard of professional conduct among lawyers and "to protect the public and the administration of justice from lawyers who have demonstrated by their conduct that they are unable or likely to be unable to discharge properly their professional responsibilities." Standards, rule 1.1 (1993); *see also In re Strong*, 616 P.2d at 585. Standards rule 4.2 states:

> Disbarment is generally appropriate when a lawyer:
>
> (a) knowingly engages in professional misconduct ... with the intent to benefit the lawyer or another or to deceive the court, and causes serious or potentially serious injury to a party, the public or the legal system ... or
>
> (b) engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, *false swearing,*

misrepresentation, *fraud* ... or *theft* ....

(Emphasis added.) Smith was convicted of theft by fraud and two counts of false swearing. Therefore, by definition, his Wisconsin convictions subject him to disbarment in Utah.

### D. Motion for Summary Judgment

■ Smith admitted his Wisconsin criminal convictions and at no time contradicted this admission by submitting affidavits or other proof to the trial court. Yet he attempts to establish an issue of material fact by refusing to admit that these convictions occurred on February 22, 1985, while simultaneously relying upon this date for his statute of limitations argument. He also attempts to create an issue of fact by denying that his conduct involved moral turpitude. Utah Rule of Civil Procedure 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The Utah Bar presented certified copies of Smith's Wisconsin convictions. Under RLDD 19(e), such proof of conviction of a crime is conclusive evidence of guilt, and under Standards rule 4.2, false swearing, and theft by fraud are misconduct warranting disbarment as a matter of law. The Bar has met its burden of support. It is Smith who has utterly failed in his response to produce, by affidavits or otherwise, specific facts showing that there is a disputed material issue for trial. Bald statements do not suffice to establish a genuine issue of material fact. *See Thayne v. Beneficial Utah, Inc.,* 874 P.2d 120, 124 (Utah 1994); *D & L Supply v. Saurini,* 775 P.2d 420, 421 (Utah 1989); *Town of Alta v. Ben Hame Corp.,* 836 P.2d

---

respondent may assert any judicial deficiency which establishes that the interim suspension may not properly be ordered, such as that the crime does not reflect adversely on the respondent's honesty, trustworthiness or fitness as a lawyer in other respects, or that the respondent is not the individual convicted."

797, 804 (Utah.Ct.App.1992). In addition, the date of conviction is not a *material* fact, even if disputed, since the statute of limitations is satisfied regardless of whether Smith's convictions occurred in February of 1985 or in April of 1986.

Smith also attempts to assert two additional arguments which are so frivolous that we confine ourselves to noting the legal and logical fallacies involved. He cites Utah Code Ann. § 78–51–16 (Supp.1996), which provides:

> Any member of the Utah State Bar complained of shall have notice of the charges against him and opportunity to defend by the introduction of evidence and the examination of witnesses called against him, the right to be represented by counsel and, upon his request, a public hearing. He shall also have the right to have witnesses subpoenaed to appear and testify or produce books, papers, documents or other writings necessary or material to his defense in the manner provided in Section 78–51–15.[4]

Smith quotes *In re Strong,* 616 P.2d at 587, stating that to "merely adopt the findings of some other tribunal would be contrary to the obvious intent of the statute that requires the Board to make its own findings based upon an evidentiary hearing." In *Strong,* however, the Board relied on the findings of fact and conclusions of law in a civil bench trial. We questioned whether these findings, which did not recite the evidence, were sufficiently conclusive of misconduct to provide grounds for disbarment. *Id.* at 587. Smith, in contrast, received a criminal jury trial, complete with a "beyond a reasonable doubt" standard of proof, plus the four posttrial reviews detailed above. He can hardly be heard to complain that he lacked notice or the opportunity to defend, the only requirements of section 78–51–16. That section does not specify in what tribunal these must occur. Also, as discussed above, under RLDD 19(e) proof of a criminal conviction is conclusive evidence of guilt. Another review of the evidence would be redundant and would violate full faith and credit.

Finally, Smith asserts that in May of 1991, the Board of Commissioners of the Utah State Bar conducted a hearing in his absence and recommended disbarment, whereupon he filed an appeal on the ground that he was not given notice of the proceedings. He now maintains that he agreed to the dismissal of the appeal in exchange for Bar counsel's stipulation "that Smith would receive a new trial where he could challenge the impropriety of the Wisconsin conviction" and that this stipulation precludes OAD's argument against the court's reexamination of his Wisconsin conviction. The record shows, however, that Bar counsel's actual statement, in a letter dated December 3, 1991, was, "I will stipulate to a new Sanctions Hearing where you may raise, *over my objection,* the impropriety of your Wisconsin conviction plus submit, subject to the Rules of Evidence, anything else in mitigation...." (Emphasis added.) Smith subsequently had the opportunity to raise the impropriety of his Wisconsin convictions both before the district court and at the sanctions hearing that followed. OAD objected, as per the stipulation. The court, acting upon its independent judgment, correctly declined to reexamine that issue. OAD's stipulation could not, and did not, bind the court. Smith also presented mitigating evidence at the sanctions hearing.[5] The court found that this evidence was neutralized by aggravating factors, particularly Smith's persistent refusal to recognize and admit the wrongfulness of his conduct and to exhibit any manner of remorse.

## CONCLUSION

We hold that the trial court correctly ruled that the Bar's complaint was filed within the applicable statutory period, that we are precluded from entertaining a collateral challenge to the Wisconsin convictions, and that the crimes of which Smith was convicted involve conduct warranting disbarment. For these reasons, we affirm the summary judg-

---

4. Section 78–51–15 addresses the power of the board and appointed committees to summon witnesses and access documents and other material necessary to the inquiry.

5. Thus Smith has now enjoyed the benefit of both the stipulation and his appeal.

ment of the district court, adopt its recommendations, and order that David J. Smith be disbarred.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur in Justice HOWE's opinion.